IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| **Plaintiff,** | : | |
| v. | : | |
| | | Civil No. |
| **One Civil Aircraft Navigation Unit** | : | |
| **(Inertial Reference Unit, Model LTN-101,** | | |
| **Part No. 465020-03030316,** | : | |
| **Serial No. 1231),** | | |
| | : | |
| **Defendant.** | | |
| | : | |
| : : : : : : : | | |

## VERIFIED COMPLAINT FOR FORFEITURE

Plaintiff, the UNITED STATES OF AMERICA, by its attorneys, Rod Rosenstein, United States Attorney for the District of Maryland, and Stefan D. Cassella, Assistant United States Attorney, brings this complaint and alleges as follows in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure and alleges as follows:

### NATURE OF THE ACTION

1. This is an action to forfeit and condemn to the use and benefit of the United States of America an aircraft navigation and guidance unit (hereinafter, the "Defendant Property") as a commodity exported or intended to be exported in violation of United States law.

### THE DEFENDANT *IN REM*

2. The Defendant Property is an aircraft navigation and guidance unit, specifically one Inertial Reference Unit, Model LTN-101, part number 465020-03030316, serial number 1231. The Defendant Property was returned to the United States for repair and subsequently was discovered to have been installed on a Mahan Air plane in violation of United States law. The

Defendant Property was seized and placed in the custody of the Department of Commerce, Office of Export Enforcement in the District of Maryland where it remains.

## JURISDICTION AND VENUE

3. Plaintiff brings this action *in rem* in its own right to forfeit and condemn the Defendant Property. This Court has jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345, over an action for forfeiture under 28 U.S.C. § 1355(a), and over this particular action under 22 U.S.C. § 401.

4. This court has *in rem* jurisdiction over the Defendant Property under 28 U.S.C. § 1355(b). Upon the filing of this complaint, the plaintiff requests that the Court issue an arrest warrant *in rem* pursuant to Supplemental Rule G(3)(b), which the plaintiff will execute upon the property pursuant to 28 U.S.C. § 1355(d) and Supplemental Rule G(3)(c).

5. Venue is proper in this district pursuant to 28 U.S.C. § 1355(b)(1) because the acts or omissions giving rise to the forfeiture occurred in this district and pursuant to 28 U.S.C. § 1395 because the property is located in this district.

## BASIS FOR FORFEITURE

6. The Defendant Property is subject to forfeiture pursuant to 22 U.S.C. § 401(b) as a commodity exported or intended to be exported in violation of the laws enforced by the United States Department of Commerce.

## FACTS

7. The forfeiture is based upon, but not limited to, the evidence outlined in the attached Declaration of Colin A. May, Special Agent of the Department of Commerce Office of Export Enforcement, which is incorporated herein by reference.

## CLAIM FOR RELIEF

8.      Pursuant to 22 U.S.C. § 401(a), the Secretary of Commerce "may seize and detain any commodity . . . or technology which is intended to be or is being exported in violation of laws governing such exports," and such property is subject to forfeiture pursuant to 22 U.S.C. § 401(b).

9.      By reason of the facts set forth and incorporated herein, the Defendant Property is properly condemned as forfeited to the United States of America pursuant to 22 U.S.C. § 401(b).

**WHEREFORE**, plaintiff, the United States of America, requests that the Court issue a warrant and summons for the arrest and seizure of the Defendant Property; that notice of this action be given to all persons known or thought to have an interest in or right against the Defendant Property; that the Defendant Property be forfeited and condemned to the United States of America; that the plaintiff be awarded its costs and disbursements in this action; and that the Court award the plaintiff such other and further relief as this Court deems proper and just.

Dated: 8-13-14

        Respectfully submitted,

        Rod J. Rosenstein
        UNITED STATES ATTORNEY
        District of Maryland

        _Stef Cassella /RCK_
        Stefan D. Cassella
        Assistant United States Attorney
        36 South Charles Street
        Fourth Floor
        Baltimore, Maryland 21201
        Tel: (410) 209-4800

## DECLARATION OF SPECIAL AGENT COLIN MAY

**I, Colin May, state as follows:**

1. I am a Special Agent of the United States Department of Commerce, Office of Export Enforcement ("OEE"). I have served in OEE since May 2010 and I am currently assigned to the OEE Washington Field Office in Herndon, Virginia. Since 2012, I have been involved in the investigation of Mahan Air ("Mahan Air"), an Iranian commercial airline located in Tehran, Iran. I submit this affidavit in support of the Government's complaint for the forfeiture of one civil aircraft navigation unit, specifically one Inertial Reference Unit ("IRU"), Model LTN-101, Part Number 465020-03030316, Serial Number 1231 (the "Defendant Property"). The Defendant Property was returned to the United States for repair and subsequently was discovered to have been installed on a Mahan Air plane in violation of United States export laws.

2. For the reasons set forth below, there are sufficient facts to support a reasonable belief that the Defendant Property is subject to forfeiture to the United States pursuant to 22 U.S.C. §401 as property subject to forfeiture when the commodity is intended to be or is being exported in violation of the laws enforced by the United States Department of Commerce.

<u>Declarant's Background and Qualifications</u>

3. Since 2010, I have been a Special Agent/Criminal Investigator with OEE. I have training and experience in the enforcement of the laws of the United States, including the preparation, presentation, and service of criminal complaints, arrests, and search warrants. I am currently assigned to the OEE Washington Field Office in Herndon, Virginia. I am a graduate of the Criminal Investigator Training Program at the Federal Law Enforcement Training Center. I have been a Certified Fraud Examiner since 2006. While working for OEE, I have been involved in

investigating violations of federal law including the illegal export of commodities from the United States, among other violations. I am empowered by law to investigate and make arrests for offenses involving the unlawful export of commodities to destinations outside the United States, as specified in the Export Administration Act ("EAA"), 50 U.S.C. App. § 2401, *et seq.*, the Export Administration Regulations ("EARs") 15 C.F.R. § 730, *et. seq.*, and the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. §§ 1701, *et seq.*, detailed further below.

4. As a Special Agent with OEE, I am familiar with the federal laws relating to the unlawful export of commodities from the United States as specified and regulated by the Department of Commerce, the Bureau of Industry and Security ("BIS"), and the Department of the Treasury, Office of Foreign Assets Control ("OFAC"). I am also familiar with related laws, the interpretation and application of federal laws and federal court procedures, and have previously assisted in the execution of numerous federal search and arrest warrants. I have participated in numerous investigations of violations of United States laws relating to the unlawful export of commodities restricted for export for reasons of national security, foreign policy, anti-terrorism and embargoed destinations. As a Special Agent with OEE, I have received training related to identifying the techniques, methods, and procedures employed by groups, organizations, companies, corporations, and individuals to export goods and commodities in violation of United States export laws.

5. Prior to joining OEE, I was a Special Agent with the United States Department of Defense assigned to Fort George G. Meade, Maryland, from 2005 until 2010. There my responsibilities included financial investigations and asset tracing investigations related to the personnel security and reliability of Federal employees, contractors, and military members with critical national security duties.

6. I have received extensive training in money laundering investigation, asset forfeiture investigation, international financial transactions, and fraud examination. I have a bachelor's degree in business from Siena College, a Master of Science degree in Forensic Studies from Stevenson University, and a graduate certificate in Forensic Accounting from Northeastern University.

## I. BACKGROUND AND SUMMARY

7. On March 6, 2014, Northrop Grumman Corporation ("NGC") submitted a letter to the United States Department of Commerce requesting authorization to return one inertial reference unit ("IRU"), serial number 1231 (the "Defendant Property"), that had been repaired on behalf of a customer in Canada. NGC requested the authorization because, following their repair of the unit, employees discovered that the unit had been installed in an aircraft operated by Mahan Air, an Iranian civil airline that is currently subject to sanctions by the United States. An IRU is an aircraft navigation and guidance unit that is used to help stabilize and position the aircraft on its course and heading. The IRU is a controlled commodity and is assigned the Export Control Classification Number ("ECCN") 7A103. These IRUs require a license to certain destinations, end-users, and end-uses based on a number of factors. The IRU contains sensitive gyros and accelerometers which may also be used in the navigation and guidance systems of missiles and rockets that could be used to transport conventional weapons or weapons of mass destruction (*i.e.*, chemical, biological, or nuclear weapons). As set forth in more detail below, I submit that there is probable cause to believe that the Defendant Property was being utilized in a Mahan Air commercial Iranian aircraft in violation of multiple laws and regulations of the United States, and thus is subject to forfeiture under those statutes and regulations.

## II. STATUTORY AUTHORITIES

### A. The Export Administration Regulations

8.      Pursuant to the Export Administration Act of 1979 ("EAA"), the United States Department of Commerce has the authority to prohibit or curtail the export of goods and technologies from the United States to foreign countries, as necessary, to protect, among other things, the national security and foreign policy of the United States. The Department of Commerce implemented that authority through the Export Administration Regulations ("EARs" or "Regulations") (see below), which restricts the export of certain goods and technologies unless authorized by the Department of Commerce through issuance of a valid export license by its Bureau of Industry and Security. 15 C.F.R. § 730.1, *et seq*. The Regulations further prohibit any transaction designed to evade or avoid, or which has the purpose of evading or avoiding said regulations, including the making of false or misleading statements or concealing a material fact in the course of the submission of documents relating to an export of goods or technologies.

9.      The EARs regulate the export of all "dual use" items, that is, items that have both a commercial application and a military or strategic use. *See* 15 C.F.R. § 730.3. The Regulations limit the export of goods and technology that could enhance foreign military capabilities, jeopardize U.S. national security, or undermine U.S. foreign policy goals. The Regulations place requirements on exporters and include a list of products, commodities and items for which an export license is required. *See* 15 C.F.R. § 744.

10.     Whether an item requires an export license depends in part on what country the item is being exported to, who the end-user of the item is, and what the end-user intends to use the item for. The Regulations expressly require a license applicant to disclose the names and addresses of all parties to a transaction, 15 C.F.R. § 748.4(b), including the applicant, purchaser, intermediate

consignee(s) (if any), ultimate consignee, and end-user, 15 C.F.R. § 748.5. Certain applications must be supported by documents designed to elicit information concerning the disposition of the items intended for export. *See* 15 C.F.R. § 748.9(b).

11. The EAR's authorizing statute, the Export Administration Act of 1979 ("EAA"), codified at 50 U.S.C. App. § 2401 *et seq.*, was reauthorized by Public Law 106-508, signed on November 13, 2000. The EAA was extended through Executive Order 13222 of August 17, 2001, and has been further extended by successive Presidential Notices, the most recent being that of August 7, 2014 (79 Fed. Reg. 46959 (Aug. 11, 2014), which has continued the Regulations in effect under the International Emergency Economic Powers Act ("IEEPA").

12. To violate, attempt to violate, or conspire to violate any portion of the EARs is a felony punishable by up to 20 years' imprisonment under IEEPA. *See* 50 U.S.C. § 1705. The Regulations make it unlawful to engage in any conduct prohibited by, or contrary to the EARs, or to refrain from engaging in any conduct required by the EARs. The Regulations make it unlawful to violate any order, license or authorization issued thereunder; to cause, aid, abet, solicit, attempt, or conspire to commit a violation of the Regulations or any order, license, or authorization issued thereunder. The Regulations prohibit the ordering, buying, removing, concealing, storing, use, sale, loan, disposition, transfer, transport, financing, forwarding, or other servicing, in whole or in part, of any item exported or to be exported from the United States, that is subject to the Regulations, with knowledge that a violation of the Regulations or any order, license, or authorization issued thereunder, has occurred. *See* 15 C.F.R. §§ 764.2(a)-(e).

13. Finally, the Regulations make it unlawful to engage in any transaction or to take any other action with the intent to evade the provisions of the EARs or any order, license, or authorization issued thereunder. 15 C.F.R. § 764.2(h).

### B. The International Emergency Economic Powers Act

14. This civil forfeiture action relates to violations of the Regulations and Executive Orders issued pursuant to the International Emergency Economic Powers Act ("IEEPA"), codified at 50 U.S.C. § 1701, *et seq*. The IEEPA gives the President certain powers, defined in section 1702, to deal with any threats with respect to which the President has declared a national emergency, and prescribes criminal penalties for violations thereunder. *See* 50 U.S.C. § 1705(a).

### C. Title 18, United States Code, Section 554

15. Additionally, 18 U.S.C. § 554, makes it unlawful to export or attempt to export or smuggle from the United States "any merchandise, article, or object contrary to any law or regulation of the United States . . . ." Violations of the EARs and IEEPA serve as predicate acts for an 18 U.S.C. § 554 violation.

### D. Title 22, United States Code, Section 401

16. Under Title 22, U.S.C. § 401(a), the Secretary of Commerce is authorized to seize and detain any item or commodity that "is intended to be or is being exported in violation of laws governing such exports." The EARs, IEEPA, and 18 U.S.C. § 554 are laws governing such exports. Forfeiture of the property is authorized under § 401(b).

### E. BIS Temporary Denial Orders

17. A Temporary Denial Order (TDO) is an administrative order issued under the authorities of the EARs (15 C.F.R. § 766.24) signed by the Assistant Secretary of Commerce for Export Enforcement "temporarily denying export privileges when such an order is necessary in the public interest to prevent the occurrence of an imminent violation." 15 C.F.R. § 764.6(c).

18. As defined in 15 C.F.R. § 766.24, "a violation may be 'imminent' either in time or degree of likelihood." To indicate the likelihood of future violations, the BIS may show that the violations are "...significant, deliberate, covert and/or likely to occur again, rather than technical or negligent..." The TDO is a public document and gives notice to companies in the United States and abroad to "cease dealing with the [named respondents of the TDO] in U.S.-origin items..." 15 C.F.R. § 766.24(b)(3).

19. A "related person" may be added to the TDO as well "in order to prevent evasion [of the TDO]..." 15 C.F.R. § 766.23(a). The related person is not the respondent to the TDO, but the terms of the TDO are made applicable to them because they are "related to the respondent by ownership, control, position of responsibility, affiliation, or other connection in the conduct of the trade or business." 15 C.F.R. § 766.23(a).

### III. CAUSE FOR FORFEITURE

#### A. Commodities Currently Detained

20. On or about April 4, 2014, your Declarant detained the Defendant Property under the authority of 15 C.F.R. § 758.7(b) and ordered it be held in custody of NGC at a secure facility in Elkridge, Maryland, within the District of Maryland. The approximate declared value of the Defendant Property was $150,000.

21. The Defendant Property is a specialized aircraft navigation and guidance unit used in civil aircraft around the world. The Defendant Property is a controlled commodity and is assigned the Export Control Classification Number ("ECCN") 7A103.

### B. Mahan Air TDO and U.S. Government Sanctions

22. Mahan Air is an Iranian airline located at Mahan Tower, No. 21, Zaadegan Street, M.A. Jenah Expressway, Tehran, Iran.

23. Mahan Air is subject to a Temporary Denial Order (TDO) issued by the Assistant Secretary of Commerce for Export Enforcement. The initial TDO was signed on March 17, 2008. The TDO was renewed subsequently in 2009, 2010, 2011, 2012, 2013 and most recently on July 22, 2014. At all times, the TDO has named Mahan Air and other related parties.

24. The TDO was issued as a result of evidence showing that Mahan Air and other parties engaged in conduct prohibited by the EARs, that is, "knowingly re-exporting to Iran three U.S.-origin aircraft, specifically Boeing 747s ... items subject to the EAR[s] and classified under Export Control Classification Number ("ECCN") 9A991.b, without the required U.S. Government authorization." Mahan Air has continued to evade U.S. export control regulations in obtaining or attempting to obtain U.S.- origin items without proper BIS or OFAC licenses.

25. The TDO prohibits Mahan Air and its related parties, including those "acting for or on their behalf, any successors or assigns, agents, or employees" from "directly or indirectly, participat[ing] in any way in any transaction involving any commodity, software or technology...exported or to be exported from the United States that is subject to the Export Administration Regulations..." *See* BIS TDO Renewal Order, Mahan Air, *et al.*, July 22, 2014, at IV. The TDO specifically enumerates activities that Mahan Air and its related parties are prohibited from engaging in:

    A) Applying for, obtaining, or using any license, license exception, or export control document;
    B) Carrying on negotiations concerning, or ordering, buying, receiving, using, selling, delivering, storing, disposing of, forwarding, transporting, financing, or

otherwise servicing in any way, any transaction involving any item exported or to be exported from the United States that is subject to the EAR, or in any other activity subject to the EAR;

C) Benefiting in any way from any transaction involving any item exported or to be exported from the United States that is subject to the EAR, or in any other activity subject to the EAR.

26. Additionally, no person may, directly or indirectly:

A) Export or reexport to or on behalf of a Denied Person any item subject to the EAR;

B) Take any action that facilitates the acquisition or attempted acquisition by a Denied Person of the ownership, possession, or control of any item subject to the EAR that has been or will be exported from the United States, including financing or other support activities related to a transaction whereby a Denied Person acquires or attempts to acquire such ownership, possession or control;

C) Take any action to acquire from or to facilitate the acquisition of any item subject to the EAR that has been exported from the U.S.;

D) Engage in any transaction to service any items to the EAR that has been or will be exported from the U.S. and which is owned, possessed, or controlled by a Denied Person, or service any items, of whatever origin, that is owned, possessed or controlled by a Denied Person if such service involves the use of any item subject to the EAR that has been or will be exported from the U.S. For the purpose of this paragraph, servicing means installation, maintenance, repair, modification or testing.

27. Mahan Air, its officers, affiliates, aircraft, and Mahan Air-controlled front companies around the world, have also been sanctioned by OFAC. In October 2011, OFAC announced that Mahan Air was being designated as a Specially Designated Global Terrorist organization ("SDGT") pursuant to Executive Order 13224 for providing financial, material and technological support to the Islamic Revolutionary Guard Corps-Qods Force (IRGC-QF). Mahan Air closely coordinates IRGC-QF covert travel arrangements, "secretly ferrying operatives, weapons, and funds on its flights," according to a public statement, dated October 12, 2011, from Undersecretary of Treasury for Terrorism and Financial Intelligence David S. Cohen announcing the designation of Mahan Air. Treasury has also designated Mahan Air as a SDGT based on its providing travel services to IRGC-QF personnel flying to and from Syria and Iran for military

training. Mahan Air also facilitated the covert travel of suspected IRGC-QF officers into and out of Iraq by bypassing normal security procedures and failing to include information on flight manifests to eliminate the paper trail.

28. Mahan Air has facilitated IRGC-QF shipments of arms and weapons to Hizballah, a group based in Syria and Lebanon, also designated by Treasury as a Foreign Terrorist Organization. On September 19, 2012, OFAC further designated 117 aircraft (by registration and manufacturer's serial number) owned or operated by various Iranian airlines. Of those designated, 42 were owned or operated by Mahan Air. In the accompanying press release announcing the designations, OFAC identified the designated aircraft as having supported the shipment of weapons and communications equipment to the Syrian Government: "In the summer of 2012, Iran used ... Mahan Air flights between Tehran and Damascus [Syria] to send military and crowd control equipment to the Syrian regime. This activity was coordinated with Hizballah, which in mid-August [2012] was designated pursuant to [Executive Order] 13582 for providing support to the Government of Syria."

### C. Ownership of the Defendant Property by Mahan Air

29. On March 6, 2014, OEE received information from NGC Guidance and Electronic Systems, Inc. that they had been sent the Defendant Property by a Canadian company for repair. In NGC's review of the records of the Defendant Property, it noticed a discrepancy in the information submitted to NGC by the Canadian company. In attempting to identify the specific aircraft that the IRU originated from, NGC contacted the Canadian company and was told that the originator of the IRU was a German company, and the part apparently originated from an aircraft belonging to Royal Jordanian Air.

30. NGC commenced testing the unit to determine the reason it failed and what repair needed to occur. The test revealed that there was a failure of the unit's inertial sensor. The test of the unit included data about that unit, and as well as the date, time, and estimated location of the failure, the aircraft tail number, and aircraft type. In this case, the IRU failed at approximately 13:44 hours on February 22, 2013, at a location near Diffa, Niger.

31. However, NGC discovered that the IRU system identified the aircraft it was installed in as having the tail number of "D-AIGK," a German-registered Airbus A340-300 series aircraft, not the aircraft operated by Royal Jordanian Air that it was represented to be from. This discrepancy raised concerns with NGC, since the aircraft identified in the unit test data was inconsistent with the customer and with NGC's customary business practices. Based on this discrepancy, NGC initiated an internal investigation on the unit and began to collect further information on the unit and its origin.

32. NGC identified that the unit originated from an Iranian-registered aircraft, EP-MMB, an Airbus A340-311, manufacturer's serial number ("MSN") 056. The aircraft was formerly owned/operated by Lufthansa under the registration D-AIGK from 1994 until 2012, when it was sold to Chaba Air of Thailand in August 2012. Chaba Air then sold it to Manas Air of Kyrgyzstan in December 2012. Manas Air was banned from flying in the European Union at approximately the same time. According to aviation industry publications, Manas only owned two aircraft, MSN 056 and MSN 020. Both were Airbus A340-311s and both were transferred to Mahan Air.

33. According to a commercial aviation database, MSN 056 was re-registered under Armenian registration as EX-34002 in January 2013, but approximately 30 days later was

delivered to Mahan Air and registered under the Iranian EP-MMB. According to photographs, EP-MMB has been owned and operated by Mahan Air since January 2013 and flies in the Mahan Air livery.

34. Because the Defendant Property originated from an Iranian commercial aircraft owned by Mahan Air and there have been attempts to conceal its origin, there is reason to believe that the Defendant Property would be returned to the same aircraft owned by Mahan Air in violation of United States export laws.

**WHEREFORE**, your Declarant requests that the Court issue an arrest warrant *in rem*, pursuant to Supplemental Rule G(3) and notice issued on the defendant property as described above; that due notice be given to all parties to appear and show cause why the forfeiture should not be decreed; that judgment be entered declaring that the defendant property be forfeited to the United States of America for disposition according to law; and that the United States of America be granted such other relief as this Court may deem just and proper, together with the costs and disbursements of this action.

I, COLIN A. MAY, a Special Agent with the OEE, United States Department of Commerce, Bureau of Industry and Security, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing Declaration is based upon reports and information known to me and/or furnished to me by other law enforcement agents and that everything represented herein is true and correct.

Executed on this 13th day of August, 2014.

_____
COLIN A. MAY
Special Agent
Office of Export Enforcement

## **VERIFICATION**

I, John J. Truex Chung, declare under penalty of perjury as provided by 28 U.S.C. § 1746, that the foregoing Verified Complaint for Forfeiture is based on reports and information furnished to me by the Department of Commerce, Office of Export Enforcement, and that everything contained therein is true and correct to the best of my knowledge and belief.

Dated: 8/13/2014

John J. Truex Chung
Contract Attorney
Forfeiture Support Associates, LLC

**MEMORANDUM**

| | |
|---|---|
| DATE: | August 14, 2014 |
| TO: | Colin May<br>United States Department of Commerce<br>Office of Export Enforcement<br><br>Kristine Cupp/Rick Henry<br>U.S. Marshal Service |
| FROM: | Jennifer Stubbs<br>Paralegal Specialist<br>U.S. Attorney's Office - District of Maryland |
| RE: | **U.S. v. One Civil Aircraft Navigation Unit (Inertial Reference Unit, Model LTN-101, Part No. 465020-03030316, Serial No. 1231)**<br><br>Civil Action No.<br><br>**CATS ID No.**<br>**Agency Case No. EE/01002006/10** |

The United States has filed a forfeiture action against **One Civil Aircraft Navigation Unit (Inertial Reference Unit, Model LTN-101, Part No. 465020-03030316, Serial No. 1231).** A copy of the Complaint for Forfeiture is attached.

Notice of this seizure will be published at www.forfeiture.gov pursuant to Rule G of the Supplemental Rules for Admiralty or Maritime and Asset Forfeiture Claims.

Thank you.


Attachment

**U.S. Department of Justice**
**United States Marshals Service**
PROCESS RECEIPT AND RETURN

| PLAINTIFF<br>UNITED STATES OF AMERICA | COURT CASE NUMBER |
|---|---|
| DEFENDANT<br>One Civil Aircraft Navigation Unit (Inertial Reference Unit, Model LTN-101, Part No. 465020-03030316, Serial No. 1231) | TYPE OF PROCESS<br>Verified Complaint in Rem |

| SERVE AT | Name Of Individual, Company, Corporation, Etc. to Serve or Description of Property to Seize<br>EE/01002006/10/ |
|---|---|
| | Address (Street or RFD / Apt. # / City, State, and Zip Code) |

Send NOTICE OF SERVICE copy to Requester:
Jennifer Stubbs, Paralegal Specialist
U.S. Attorney's Office
36 S. Charles Street, 4th floor
Baltimore, Maryland  21201

| Number Of Process To Be Served In This Case. | |
| Number Of Parties To Be Served In This Case. | |
| Check Box If Service Is On USA | |

SPECIAL INSTRUCTIONS or OTHER INFORMATION TO ASSIST IN EXPEDITING SERVICE (includes Business and Alternate Addresses, Phone Numbers, and Estimated Availability times.)
Arrest property.  Fill in the date of arrest in this process receipt and return our copy.

Signature of Attorney or other Originator requesting service on behalf of  [ X ]Plaintiff    [  ]Defendant
Telephone No. (410) 209-4800
Date Aug 14, 2014

SIGNATURE OF PERSON ACCEPTING PROCESS:    Date

### SPACE BELOW FOR USE OF TREASURY LAW ENFORCEMENT AGENCY

| I acknowledge receipt for the Total # of Process Indicated. | District of Origin No. | District to Serve No. | SIGNATURE OF AUTHORIZED TREASURY AGENCY OFFICER: | Date |
|---|---|---|---|---|

I hereby Certify and Return That I [  ] PERSONALLY SERVED, [  ] HAVE LEGAL EVIDENCE OF SERVICE, [  ] HAVE EXECUTED AS SHOWN IN "REMARKS", the Process Described on the Individual, Company, Corporation, Etc., At The Address Shown Above or at the Address Inserted Below.

[  ] I HEREBY CERTIFY AND RETURN THAT I AM UNABLE TO LOCATE THE INDIVIDUAL, COMPANY, CORPORATION, ETC. NAMED ABOVE.

| NAME & TITLE of Individual Served If not shown above: | [  ] A Person of suitable age and discretion then residing in the defendant's usual place of abode. | | |
|---|---|---|---|
| ADDRESS: (Complete only if different than shown above.) | Date of Service | Time of Service | [  ] AM<br>[  ] PM |
| | Signature, Title and Treasury Agency | | |

REMARKS:

TD F 90-22.48 (6/96)

Make (5) copies after form is signed.  SEND ORIGINAL + 4 COPIES  to TREASURY AGENCY.  Retain Copy #5 for your file.